COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-393-CV

BLACKBURNE & BROWN MORTGAGE APPELLANTS

FUND I AND DAVID, GOODMAN &

MADOLE, A PROFESSIONAL

CORPORATION

V.

ATMOS ENERGY CORPORATION APPELLEE

F/K/A TXU GAS CO.

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In seven issues, Appellants Blackburne & Brown Mortgage Fund I (“Blackburne”) and David, Goodman & Madole, A Professional Corporation, (“DGM”) appeal the trial court’s orders granting summary judgment in favor of Appellee Atmos Energy Corporation and granting sanctions against DGM in the amount of $24,000.  We will affirm.

I. 
Factual
 
and Procedural Background

In January 2004, raw sewage flooded a retirement home (the “property”) located in Fort Worth.  Blackburne, who held a deed of trust covering the property as security for a loan that it had extended to the owners, sued Atmos for damages sustained by the property.  Blackburne alleged that the property flooded because Atmos negligently damaged a sewer line running underneath the property in connection with either the original installation in 1999 of a gas line located on top of the sewer line by independent contractor S.L. Sibert or the subsequent lowering of the gas line around the same time of the sewage flood by independent contractor Driver Pipeline.

On September 25, 2006, the trial court signed an order granting Atmos’s no evidence motion for summary judgment on the ground that Atmos did not owe Blackburne a duty.  That same day, the trial court signed an order granting Atmos’s motion—pursuant to Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code—against Blackburne for frivolous pleadings and awarded Atmos attorneys’ fees in the amount $24,000 as a sanction against DGM, who represents Blackburne.  The trial court signed a first amended order granting Atmos’s motion for frivolous pleadings on October 26, 2006.

II.  
No Evidence Motion for Summary Judgment

In its first issue, Blackburne argues that the trial court erred by granting Atmos’s no evidence motion for summary judgment because Blackburne came forward with evidence showing that Atmos “exercised control over the process by which” the gas line was installed and “acknowledged its responsibility for the damage to the sewer line.”

A.  Standard Of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
Sudan v. Sudan,
 199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).  Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact.  
Kindred v. Con/Chem, Inc.,
 650 S.W.2d 61, 63 (Tex. 1983).  A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant’s favor.  
Moore,
 981 S.W.2d at 266; 
see also
 
Anderson v. Liberty Lobby, Inc.
, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 2513-14 (1986) (interpreting 
Fed. R. Civ. P.
 56).

B.  No Evidence Of Duty

A negligence cause of action consists of (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach.  
Firestone Steel Prods. Co. v. Barajas
, 927 S.W.2d 608, 613 (Tex. 1996); 
Greater Houston Transp. Co. v. Philips
, 801 S.W.2d 523, 525 (Tex. 1990).  A prerequisite to tort liability is the existence of a legally cognizable duty.  
Barajas
, 927 S.W.2d at 613.  The plaintiff must establish both the existence and the breach of a duty owed to the plaintiff by the defendant to establish liability.  
Philips
, 801 S.W.2d at 525.  Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question.  
Id
.

Although a general contractor does not ordinarily owe a duty to ensure that an independent contractor performs its work safely, a duty arises if the general contractor retains some control over the manner in which the independent contractor performs its work.  
Lee Lewis Constr., Inc. v. Harrison
, 70 S.W.3d 778, 783 (Tex. 2001); 
Elliot-Williams Co., Inc. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  In order for liability to attach, the retained right of control must be “more than a general right to order the work to start or stop, to inspect progress or receive reports.”  
See
 
Hoechst-Celanese Corp. v. Mendez
, 967 S.W.2d 354, 356 (Tex. 1998); 
Johnson v. Scott Fetzer Co.
, 124 S.W.3d 257, 265 (Tex. App.—Fort Worth 2003, pet. denied).  The retained right of control must extend to the operative details of the contractor’s work such that the contractor is not free to do the work in his own way.  
Johnson
, 124 S.W.3d at 265; 
see also Redinger v. Living
, 
Inc.
, 689 S.W.2d 415, 418 (Tex. 1985) (citing 
Restatement (Second) of Torts
 § 414 (1977)).

In this case, Blackburne relied on the affidavits of Ray Bartram and Donna Barbee and the deposition testimony of Peter Pederson, Atmos’s corporate representative, to raise a genuine issue of material fact in response to the challenged negligence element of duty.  Bartram’s affidavit merely sets forth the events surrounding his assumption of a promissory note secured by a deed of trust in favor of Blackburne and the eventual discontinuance of the property’s use due to the “sewer backup.”  Bartram’s affidavit provides no facts indicating that Atmos retained some control over the manner in which the independent contractors, Sibert and Driver, performed their work installing and lowering the gas line in 1999 and 2004.  Similarly, Barbee’s affidavit merely states that she operated the property in January 2004, that the property was flooded with sewage on January 16, 2004, and that a representative from TXU Gas Co.
(footnote: 2) “accepted responsibility for the sewer back up due to the gas utility interfering with the sewer line.”  Like Bartram’s affidavit, Barbee’s affidavit sets forth no facts demonstrating that Atmos retained some control over the manner in which Sibert and Driver installed and lowered the gas lines in 1999 and 2004.  To the extent that Barbee’s statement—that TXU Gas Co. “accepted responsibility for the sewer back up”—can be interpreted as evidence of duty, it is a conclusory statement that does nothing more than create a mere surmise or suspicion of a fact; it is not evidence on which a reasonable jury could return a verdict in Blackburne’s favor.  
See Kindred,
 650 S.W.2d at 63; 
Moore,
 981 S.W.2d at 266.  Consequently, the affidavits of Bartram and Barbee fail to set forth evidence raising a genuine issue of material fact that Atmos owed Blackburne a legal duty.  
See Harrison
, 70 S.W.3d at 783 (holding that a duty arises if the general contractor retains some control over the manner in which the independent contractor performs its work).

Regarding the deposition testimony of Pederson, he testified that the only work performed on the gas line underneath the property consisted of its installation in 1999 by independent contractor Sibert, its lowering in 2004 by independent contractor Driver, and a leakage survey conducted in 2003. Although Pederson testified that there is normally an Atmos employee “who would visit the site and inspect specifications,” he unequivocally stated that Atmos does not direct the work performed by its contractors and that the contractor “is responsible for [the] method and means of installation.”  In terms of the installation of the gas line in 1999, Pederson testified that Sibert was responsible for the “manner and method” of work and for “directing” the work.  Pederson offered no testimony that Atmos retained a level of control over the work performed by Sibert and Driver such that they were not free to perform the work in their own way.  
See Johnson
, 124 S.W.3d at 265.  Rather, the level of control exercised by Atmos over Sibert and Driver as testified to by Pederson was no “more than a general right to order the work to start or stop, to inspect progress or receive reports.”  
See Hoechst-Celanese Corp.
, 967 S.W.2d at 356; 
Johnson
, 124 S.W.3d at 265.  As such, Pederson’s deposition testimony fails to set forth evidence raising a genuine issue of material fact that Atmos owed Blackburne a legal duty.  
See Harrison
, 70 S.W.3d at 783.

Having examined the summary judgment evidence in the light most favorable to Blackburne, indulging every reasonable inference and resolving any doubts against the motion, we hold that the trial court did not err by granting Atmos’s no evidence motion for summary judgment.  We overrule Blackburne’s first issue.

III.  Sanctions

In issues two through seven, DGM
(footnote: 3) asserts various arguments challenging the trial court’s September 25, 2006 and October 26, 2006 orders awarding Atmos attorneys’ fees in the amount of $24,000 as sanctions against DGM for filing frivolous pleadings.  For the reasons set forth below, we need only address the arguments relevant to the October 26, 2006 order imposing sanctions.

A.  Plenary Power

In its fifth issue, DGM argues that the October 26, 2006 order granting Atmos’s motion for frivolous pleadings is void because the trial court’s plenary jurisdiction expired one day earlier on October 25, 2006.

A trial court may impose sanctions after a judgment is entered so long as it retains plenary jurisdiction.  
Scott & White Mem’l Hosp. v. Schexnider
, 940 S.W.2d 594, 596 (Tex. 1996).  A court retains jurisdiction over a case for thirty days after entry of judgment.  
Tex. R. Civ. P.
 329b(d).  This period is extended up to an additional seventy-five days upon the timely filing of a motion for new trial or motion to correct, modify, or reform the judgment.  
Tex. R. Civ. P.
 329b(c), (g); 
Lane Bank Equip. Co. v. Smith
 
S. Equip., Inc.
, 10 S.W.3d 308, 310 (Tex. 2000).  Judicial action taken after the trial court’s plenary power has expired is void.  
In re Dickason
,
 
987 S.W.2d 570, 571 (Tex. 1998); 
State ex rel Latty v. Owens
, 907 S.W.2d 484, 486 (Tex. 1995).

Here, the trial court’s order granting Atmos’s no evidence motion for summary judgment and its order granting Atmos’s motion for frivolous pleadings, both signed on September 25, 2006, disposed of all claims and parties.  The trial court’s plenary power expired thirty days later on October 25, 2006, if neither party timely filed a motion for new trial or motion to correct, modify, or reform the judgment, which would have extended the trial court’s plenary power until thirty days after such a motion was overruled by written order or by law.  
Blackburne filed a motion to reconsider the September 25, 2006 sanctions order on October 13, 2006.  The motion states in part the following:

[Blackburne and DGM] request that the Court [] reconsider the September 25, 2006 Order Granting Atmos Energy’s Motion Against Blackburne for Frivolous Pleadings 
because the order is defective under Rule 13 and Chapter 10 in that the order does not contain the findings required by Rule 13 and Chapter 10
. . . .

The Court’s September 25 Order Granting Atmos[] Energy’s Motion for Frivolous Pleadings merely states that Atmos’ motion is granted, and without any further findings or explanation, that Blackburne’s claims against Atmos are dismissed with prejudice, and awarding Atmos sanctions in the amount of $24,000 against David, Goodman & Madole. . . .

Blackburne and David, Goodman & Madole request the Court to reconsider its order and withdraw the order in its entirety.  
Alternatively, Blackburne and David, Goodman & Madole request the Court to clarify the order with the findings required by TRCP 13 and CPRC § 10.005.  
[Emphasis added.] 

Blackburne thus did not ask the trial court to merely reconsider its decision to impose sanctions.  Rather, it also requested that the trial court correct the September 25, 2006 order because it does not contain the required findings mandated by rule 13 and section 10.005 of the civil practice and remedies code.
(footnote: 4)  Because Blackburne’s motion requested that the trial court correct or modify its September 25, 2006 order so that it meets the specificity requirements delineated in rule 13 and section 10.005, the motion constituted a rule 329b(g) motion to modify, correct, or reform a judgment; therefore, it extended the trial court’s plenary power until thirty days after the motion was overruled by written order or by law.  
See 
Tex. R. Civ. P.
 329b(e), (g).  Having signed the October 26, 2006 amended order granting Atmos’s motion for frivolous pleadings just thirteen days after Blackburne filed its motion to reconsider, the trial court had jurisdiction to enter the October 26, 2006 amended order awarding Atmos sanctions.  Accordingly, we overrule DGM’s fifth issue.

In its third issue, DGM argues that the September 25, 2006 order awarding sanctions does not meet the specificity requirements of rule 13 and section 10.005.  In its fourth issue, DGM argues that the trial court abused its discretion by signing the September 25, 2006 order without having conducted an evidentiary hearing. 
 Because the October 26, 2006 order superseded the September 25, 2006 order, we overrule DGM’s third and fourth issues, which present arguments concerning the September 25, 2006 order.

B.  Sufficiency Of Evidence And Evidentiary Hearing

In its seventh issue, DGM challenges the sufficiency of the evidence supporting the trial court’s October 26, 2006 order imposing sanctions.  DGM argues in its sixth issue that the trial court abused its discretion by signing the October 26, 2006 order without conducting an evidentiary hearing.

We review sanctions orders under an abuse of discretion standard.  
Low v. Henry
, 221 S.W.3d 609, 614 (Tex. 2007).  An appellate court may reverse the trial court’s ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable.  
Id
.; 
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985).
  
We review the entire record to determine whether the imposition of sanctions constitutes an abuse of discretion.  
Herring v. Wellborn
, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet denied).
  
To determine if the sanctions were appropriate or just, we must ensure there is a direct nexus between the improper conduct and the sanction imposed.  
Low
, 221 S.W.3d at 614.

The bases of the trial court’s sanctions award were section 10.001(2) and (3) of the civil practice and remedies code and rule 13. 
 
Chapter 10 of the civil practice and remedies code authorizes a trial court to impose sanctions upon a person, a party represented by the person, or both for advancing frivolous pleadings.  
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 10.001-.006.  Section 10.001 provides in part as follows:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory’s best knowledge, information, and belief, formed after reasonably inquiry:

. . . . 

(2)  each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)  each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I
d
. § 10.001(2), (3).  The sanction that a trial court may impose upon a person, a party represented by the person, or both for advancing frivolous pleadings includes an order to pay to the other party the reasonable expenses, including attorneys’ fees, incurred by the other party because of the filing of the pleading or motion.  
Id
. § 10.004(c)(3).  Section 10.003 further requires that a party who is the subject of a motion for sanctions under section 10.002 is entitled to “notice of the allegations and a reasonable opportunity to respond to the allegations.”  
Id
.
 § 10.003.

Here, the order states in part the following:

The Court FINDS that the following pleadings, all signed by David, Goodman & Madole, on behalf of Blackburne, were groundless and filed in bad faith, and/or for the purpose of harassment . . . .

The Court FINDS that these pleadings [Blackburne’s first amended petition, response and amended response to Atmos’s no evidence motion for summary judgment, and response to Atmos’s motion for frivolous pleadings, among others] are based upon factual and legal claims to an alleged right of Blackburne as a lienholder of real property to recover property damages against Atmos Energy, as an alleged third-party tortfeasor, when there is no basis in law for such a claim, and no evidence that Blackburne has ever had at any relevant time any property interest, or interest as a lienholder, in the subject property.

These claims were barred by existing law and are therefore groundless and brought in bad faith or for the purposes of harassment.  The existing law is well settled and no reasonably prudent lawyer would believe that a change in the law would be acceptable.

. . . .

The Court FINDS that the Plaintiff’s pleadings mentioned above were presented to harass or cause unnecessary delay or needless increase in the cost of litigation, that the claims and legal contentions mentioned above were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and the factual allegations in Plaintiff’s pleadings mentioned above had no evidentiary support and were never likely to have evidentiary support.

Portions of the order thus track the language of rule 13 while other portions of the order track the language of chapter 10.

We initially note that the hearing on Atmos’s original and supplemental motion for frivolous pleadings took place on September 14, 2006.  Atmos’s original motion for frivolous pleadings contains a certificate of service indicating that Atmos served the motion on counsel for Blackburne on August 31, 2006. As to the supplement to the original motion for frivolous pleadings, Atmos admitted two exhibits during the hearing.  One is a letter indicating that it filed the supplement to its original motion with the trial court and served the supplement upon Blackburne.  The other exhibit is a letter from Atmos advising opposing counsel that a hearing on the motion for frivolous pleadings was set for September 14, 2006.  Both documents contain accompanying return receipt green cards indicating that DGM received the documents on September 11, 2006.  Although counsel for Blackburne argued that it would be improper to grant $35,000 in attorneys’ fees (the amount requested by Atmos at the September 14, 2006 hearing) as a sanction because he did not receive adequate notice of Atmos’s supplement to its original motion for frivolous pleadings, the trial court ultimately limited the total sanctions amount to $24,000, which is the amount of attorneys’ fees pleaded by Atmos in its original motion for frivolous pleadings.  
The record thus demonstrates that Blackburne and DGM received notice of the allegations and were provided with a reasonable opportunity to respond as required by section 10.003.  
See 
id
.  We overrule DGM’s sixth issue.

Moreover, the sanctionable conduct underlying the trial court’s decision for imposing the sanctions is evident upon reviewing the hearing on Atmos’s motion and supplement to its original motion, the exhibits attached to its motion and supplement, Blackburne’s response and accompanying exhibits to Atmos’s motion for sanctions, and other relevant portions of the record.  Specifically, 
at the hearing on Atmos’s motion for frivolous pleadings, Atmos’s counsel reasoned that sanctions were appropriate in part because Blackburne, as a secured lender, lacks standing to sue and recover for the alleged damage to the property.  She explained that a deed of trust is a “contract that allows a creditor recourse upon default to the collateral property.”  The deed of trust is not property, and it thus “conveys a contract interest”; “it does not convey a property interest.”  Counsel for Atmos emphasized the recognized rule that “a creditor under a deed of trust is not regarded as an owner of any type of property interest in the underlying property securing the debt” and that a cause of action for injury to real property belongs to the person who owns the property.  Thus, 
under the facts of this case, counsel argued that sanctions were appropriate because Blackburne has never owned any interest in the damaged property, and Texas law does not recognize Blackburne’s ability as the grantee of the deed of trust covering the property to recover for damages to the property.  DGM’s counsel responded that he was indeed familiar with the relevant law and that the lawsuit was filed because they were seeking “an extension of [Blackburne’s] rights to also pursue any parties who may be responsible for the decrease” in value of the collateral.  The trial court was quick to point out its concerns about the utter dearth of law supporting Blackburne’s case.  The following exchange occurred:

[DGM counsel]: [T]he allegations that Blackburne is . . . pursuing in this case is its right as a secured lender to pursue a claim against a third party – – 

The Court: Let me stop you right there, Counsel.

During the summary judgment hearing, I asked you if you had a single case that supported that position that the third party in this case . . .

[DGM counsel]: Yes, sir.

The Court: – – had any right to sue the borrower under these circumstances.

[DGM counsel]: That’s correct, Judge.

The Court: Have you come up with a case?

[DGM counsel]: I have not come up with a case as of yet, Judge, but I do want to emphasize that we believe the right should be there.

Counsel for Blackburne thus had no law supporting its claims.

Atmos’s counsel also argued that sanctions were in order because Blackburne continued to pursue the litigation after May 1, 2006, the date that Blackburne assigned any rights that it had pursuant to the deed of trust—under which it claimed an interest to the property—to another entity, Vance Road Property, L.L.C.  Counsel stated, “Following the assignment of this interest and any rights they ever had with respect to a lien on this property, [Blackburne] . . . continued to assert that it had a lien.”  The record contains numerous documents signed by DGM’s counsel after May 1, 2006.  DGM’s counsel nonetheless argued that Blackburne is the sole shareholder of Vance Road Property, L.L.C. and that it “could easily continue to maintain this suit from the perspective of Vance Road Property, L.L.C.”  But Blackburne is not Vance Road Property, L.L.C.

Based on the record before it, the trial court could have concluded pursuant to section 10.001(2) or 10.001(3) that Blackburne’s claims were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or that Blackburne’s allegations or other factual contentions lacked evidentiary support.  
See id
. § 10.001(2), (3).  There is also a direct nexus between DGM’s conduct and the sanctions imposed, which is a lesser amount of sanctions than that sought by Atmos at the hearing.  Thus, having reviewed the entire record, we hold that the trial court did not abuse its discretion by awarding Atmos $24,000 in attorneys’ fees as sanctions against DGM.  Because we conclude that the sanctions order is sustainable under either section 10.001(2) or 10.001(3), we need not consider whether the award is sustainable under rule 13.  We overrule DGM’s seventh issue.

C.  Presumption Of Good Faith

In its second issue, DGM argues that Atmos did not meet its burden of overcoming the presumption that all pleadings are filed in good faith.
(footnote: 5)  As previously discussed, we determined that the trial court did not abuse its discretion by imposing the sanctions award pursuant to section 10.001(2) or 10.001(3) of the civil practice and remedies code.  While rule 13 requires a party to have filed a groundless pleading brought in bad faith or for the purposes of harassment, chapter 10 sanctions can be awarded if the pleading or motion was filed for an improper purpose or if a claim is not warranted by existing law or by a 
nonfrivolous 
argument for the extension, modification, or reversal of existing law.  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 10.001(1), (2).  This “nonfrivolous” requirement has been construed by at least one other court to be the same as the “good faith” requirement found in rule 13.  
See Elwell v. Mayfield
, No. 10-04-00322-CV, 2005 WL 1907126, at *5 (Tex. App.—Waco Aug. 10, 2005, pet. denied) (mem. op.); 
see also 
Tex. R. Civ. P.
 13 (“‘Groundless’ for purposes of this rule means no basis in law or fact and not warranted by 
good faith 
argument for the extension, modification, or reversal of existing law.”) (emphasis added).  Here, the conduct detailed above that Blackburne admitted not having any legal support for its claim and that it continued to file documents and pursue the litigation even after assigning any rights that it had under the deed of trust to another entity considered with the fact that Blackburne had notice and knowledge that it did not own a property interest in the property was sufficient to overcome the nonfrivolous requirement in section 10.001(2).  
See generally Monroe v. Grider
, 884 S.W.2d 811, 819 (Tex. App.—Dallas 1994, writ denied) (reasoning that a party acts in bad faith when discovery puts him on notice that his understanding of the law or facts may be incorrect and he does not make reasonable inquiry thereto before filing the pleading).  Each of the cases cited by DGM in support of its theory are also inapposite.
(footnote: 6)  We overrule DGM’s second issue.

IV.  
Conclusion

Having overruled each of Blackburne’s and DGM’s issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL A:  CAYCE, C.J.; HOLMAN and MCCOY, JJ. 

DELIVERED:  November 15, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Atmos used to be TXU Gas Co.

3:
We refer to issues two through seven as DGM’s issues because the trial court ordered DGM to pay the sanctions.

4:
A rule 13 sanction’s order must state with particularity good cause for finding that the pleadings of the party challenging the sanctions order were groundless and not brought in good faith or groundless and brought for purposes of harassment.  
Bradt v. Sebek
, 14 S.W.3d 756, 769 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).  In imposing sanctions under chapter 10, the trial court is required to specifically detail the sanctionable conduct in its order.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 10.005 (Vernon 2002).

5:
See GTE Commc’ns Sys. Corp. v. Tanner
, 856 S.W.2d 725, 730 (Tex. 1993) (considering rule 13 sanctions and stating that courts generally presume that pleadings and papers are filed in good faith).

6:
See Brader v. Ellinghausen
, 154 S.W.2d 662 (Tex. Civ. App.—Fort Worth 1941, no writ); 
Am. Nat’l. Ins. Co. v. City of Port Arthur
, 62 S.W.2d 256 (Tex. Civ. App.—Beaumont 1933, no writ); 
Carroll v. Edmondson
, 41 S.W.2d 64 (Tex. Comm’n App. 1931, judgm’t adopted).